UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
(Knoxville Division)



FILED
JAN 21 2021
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

| | |
|---|---|
| BETTIS C. RAINSFORD, SR. ) | |
| ) | Case No.: 3:21-CV-25 |
| Plaintiff, ) | |
| vs. ) | |
| ) | **COMPLAINT** |
| APEX BANK, ) | |
| ) | |
| Defendant ) | |

**COMES NOW** Plaintiff, Bettis C. Rainsford, Sr., proceeding *pro se*, who would respectfully plead unto this honorable Court as follows:

### JURISDICTION AND VENUE

1. Plaintiff is an individual citizen and resident of Edgefield County, South Carolina.

2. Apex Bank ("Apex") is a corporation which has its principal place of business in Knoxville, Tennessee.

3. Subject matter jurisdiction is proper before this honorable Court under 28 U.S.C. § 1332 (a) because there is complete diversity of citizenship between Plaintiffs and Defendant, and more than $75,000.00 exclusive of interest and costs, is at stake.

4. Venue is proper before this honorable Court pursuant to 28 U.S.C. §§ 1391(b)(1) & (2) because the U.S. District Court for the Eastern District of Tennessee is the federal judicial district where the Defendants reside and where a substantial part of the events or omissions giving rise to the claim occurred.

### BACKGROUND

#### The South Carolina Litigation

5. In June of 2015, Apex's South Carolina lawyer came to Plaintiff's office to request information pertaining to Plaintiff's former partner against whom Apex held a deficiency judgment

1

for which the Plaintiff was not liable. Owing no fiduciary obligation to this former partner, the Plaintiff tried to be as helpful as possible to Apex. He provided Apex with a great deal of information related to the amenities which it owned at Mount Vintage Plantation and did all that he could to assist them with information about his former partner.

6. Several months later, the same lawyer came back to see the Plaintiff, again seeking information about the Plaintiff's former partner. In that meeting, the lawyer revealed that Apex was considering purchasing a deficiency judgment against the former partner held by SunTrust Bank. The Plaintiff immediately responded to the lawyer that the judgment was one for which the former partner had indemnified the Plaintiff, but the former partner had defaulted on the indemnification and declared personal bankruptcy. Therefore, the Plaintiff was also liable on the judgment. The lawyer immediately responded to the Plaintiff saying that Apex had appreciated his help and would not seek to enforce the judgment against him.

7. Subsequently, the Apex lawyer and the Plaintiff reached an agreement in which the Plaintiff would provide additional information about his former partner which he reasonably believed would be of substantial benefit to Apex, and would convey to Apex, in lieu of foreclosure, two residential lots which were under a separate mortgage then owned by Apex. In exchange, Apex agreed not to pursue the Plaintiff, his companies or his properties on the judgment. A detailed written Agreement was drafted and, after changes requested by the Apex lawyer were made, the Agreement was executed by email by the Apex lawyer who had indicated that he had full authority to do so. Subsequently, upon information and belief, Brad Hailey ("Mr. Hailey"), senior vice president and chief credit officer of Apex, repeatedly told the Apex lawyer that Apex was in full agreement with the document as drafted.

8. However, several months later, in a total breach of the Agreement, Apex filed Supplemental Proceedings against the Plaintiff.

9. As a direct response to Apex's breach, Plaintiff filed a suit against Apex in South Carolina alleging, among other things, breach of contract.

10. The Apex's breach was both inexcusable and unjustifiable. It constitutes a disavowal of a *written* Agreement, executed by their lawyer and approved by their senior vice president and chief credit officer, Mr. Hailey, against a person from whom the Defendant had solicited information and who had supplied important detailed information to assist them.

11. Apex asserted several frivolous, unsubstantiated, and demonstrably false defenses to Plaintiff's South Carolina claims.

12. Plaintiff will prevail in the South Carolina litigation; and, upon information and belief, Apex has actual knowledge of the same.

13. Despite the frivolity of the claims, Apex, its principal and chief executive officer, Mr. Matthew Daniels ("Mr. Daniels"), and Mr. Hailey have pursued the Plaintiff for more than four years, breaching their agreement, engaging in unfair trade practices in violation of the South Carolina Unfair Trade Practices Act (SCUTPA), tortiously interfering with the prospective advantage of the Plaintiff, and employing every tactic imaginable to harass the Plaintiff, his ex-wife, and other individuals who have come to the aid of the Plaintiff.

14. As a direct and proximate result of the wanton, willful, reckless, and relentless pursuit by Apex, Mr. Daniels and Mr. Hailey of the Plaintiff in the South Carolina litigation in violation of the written agreement, the Plaintiff has had (1) to expend an enormous amount of his time and energy defending himself and (2) to engage a number of attorneys to represent him, incurring an enormous amount of legal fees and expenses.

3

## The Tennessee Litigation

15. After battling the Apex, Mr. Daniels, and Mr. Hailey for a number of years, the Plaintiff came to understand that their action in breaching their agreement with the Plaintiff is very characteristic of the dishonest and deceitful way of doing business that they have followed in their relentless and greedy pursuit of profits. From his research on the Apex, Mr. Daniels, and Mr. Hailey, Plaintiff discovered that the principal business strategy and activity, and the source of the remarkable profitability of Apex was to seek out unfortunate debtors and guarantors who have encountered financial difficulties, purchase the loans or judgments for which they are liable at substantial discounts from face value, and pursue these unfortunate people with a vengeance, bringing misery and suffering to hundreds, if not thousands, of individuals and companies throughout Tennessee and across the nation. He believes that these predatory actions are what has enabled Apex to "thrive during the financial crisis," as described by Mr. Daniels in an article in the *Knoxville News* on January 4, 2016 and become the third most profitable bank in the nation in its size category.

16. Moreover, Apex, Mr. Daniels, and Mr. Hailey consistently, intentionally, and wrongfully use federal and state civil justice systems as a profit center. Specifically, they file frivolous litigation; assert baseless allegations; maintain defenses completely unsupported by law and fact; file ridiculous motions; ignore court orders, including those of this honorable Court; fail to respond to even their most basic discovery obligations; refuse to subject themselves to the Rules of Alternative Dispute Resolution; and flaunt the Rules of Civil Procedure with utter impunity.

17. Apex's disrespect and abuse of the various civil justice systems serves it by either accelerating or slowing down business transactions, litigation, and other proceedings to drain their adversaries of resources and the will to fight.

18. Upon information and belief, Apex, its agent and officers, often brag that Apex proudly wages "Lawfare" against others in order drive its profits. Upon information and belief, this practice clogs dockets; wastes judicial resources; and abuses the civil justice system.

19. The Plaintiff believes that the judiciary, the Bar, and the public has a right to know of the predatory and disrespectful nature of the strategy and actions of the Apex, Mr. Daniels, and Mr. Hailey, and that the Plaintiff has a constitutional right, under the First Amendment to the United States Constitution, to inform the public of their strategy and activities.

20. When the South Carolina Court ordered an entry of default against one of the parties in the South Carolina litigation, Jim Clayton, the Plaintiff issued a press release dated October 29, 2018 announcing the entry of default and providing a report on the South Carolina case which he subsequently disseminated to newspapers and other media outlets in Eastern Tennessee. That press release is attached hereto as Exhibit A. Everything in the press release is substantially true and is, therefore, not defamatory.

On March 8, 2019, Apex, Mr. Daniels, and Mr. Hailey filed a suit in State Court Knox County, Tennessee against the Plaintiff for defamation and tortious interference with business, alleging that the press release issued by the Plaintiff and published by the *Knoxville Daily Sun* on October 30, 2018 was defamatory. A copy of the Summons and Complaint in this suit is attached hereto as Exhibit B. According to the complaint in their suit, they claimed that the statements made by the Plaintiff which were false and defaming to them include that they engaged in their professional banking endeavors the following:

> (1) did so 'pursue the unfortunate debtors and guarantors with a vengeance;' (2) 'brought misery and suffering to hundreds of individuals and companies throughout Tennessee and across the nation;' (3) engaged in 'predatory actions' in their professional banking endeavors' (4) engaged in 'unfair trade practices' in their professional banking endeavors and (5) tortiously interfered with [Plaintiff's] business."

5

21. The crux of this issue is whether the statements made by the Plaintiff were false or whether they were true. In order for any published statement to be defamatory, the statement must be false. Truth is an absolute defense to any claim of defamation.

22. Apex, Mr. Daniels, and Mr. Hailey all knew that the Plaintiff's statements were substantially true; and therefore, they knowingly lacked *probable cause* for filing this suit.

23. While they knew that their suit had no merit, they nevertheless filed the suit to intimidate the Plaintiff and to burden him by requiring him to defend this action in Tennessee. They knew that the South Carolina litigation had substantially depleted the Plaintiff's financial resources and that he would probably be unable to secure legal representation to defend himself against their litigation in Tennessee.

24. At the very same time Apex, Mr. Daniels, and Mr. Hailey were filing their defamation suit against the Plaintiff, they were foreclosing upon the oldest African American Church in Winston-Salem, North Carolina which had, according to press reports, over 1,000 members. The year before they had purchased the loan on this church at a price the Plaintiff believes was equal to or less than half of the $3,300,000 million face value of the loan (ie.: $1,650,000).

25. When Apex, Mr. Daniels, and Mr. Hailey succeeded on May 23, 2019, just several months after filing the defamation suit against the Plaintiff, in consummating the foreclosure, they were able to bid in the church at the foreclosure auction for $3,469,760.67, which was the amount of the mortgage, plus accrued interest, penalties and expenses, but which they had purchased a year earlier at a very substantial discount from face value. The deed documenting the purchase is attached hereto as Exhibit C. The Plaintiff has since learned that they sold the property in June of this year at a price of $4,000,000, as is shown on the deed which is attached hereto as Exhibit D.

6

Case 3:21-cv-00025   Document 1   Filed 01/21/21   Page 6 of 16   PageID #: 6

26. If the Plaintiff's belief is correct that they purchased the loan at 50% or less of face value ($1,650,000), then Apex has realized a profit of approximately $2,350,000 or more, ($4,000,000 sales price minus $1,650,000 purchase price of the mortgage) by foreclosing on a 127-year-old African American church and evicting its 1,000 members of that church. At the last hearing of the court before the foreclosure on this church, over 100 members of the church came to voice their support of the church, but Apex, Mr. Daniels, and Mr. Hailey were not moved. They held firm on their intent to realize an obscene profit at the expense of these people who had given their tithes and offerings to the church for many decades.

27. Given the undeniability of this one transaction which was occurring at the very time they were filing their defamation suit against the Plaintiff, no reasonable person could contend that Apex, Mr. Daniels, and Mr. Hailey did not know that the statements made by the Plaintiff in his press release were substantially true. They may not have liked the Plaintiff's statements about them "pursuing the unfortunate debtors and guarantors with a vengeance," "bringing misery and suffering to hundreds of individuals and companies throughout Tennessee and across the nation," and "engaging in predatory actions." They certainly would have preferred that the Plaintiff had not exposed them. *However, if they do not want to be accused of these actions, then they should not do them.* Certainly, there was no reasonable basis for them to believe that the Plaintiff's statements were untrue. And certainly, they did not have *probable cause* to file a suit against the Plaintiff alleging defamation.

28. Additionally, since they knew that the Plaintiff's resources had been substantially depleted by having to defend himself against Apex's South Carolina litigation, they knew that the Plaintiff would not be able to pay damages in the highly unlikely event that a jury should decide in their favor on the defamation claim. Thus, there was no reason for them to believe that they

7

would realize any financial benefit from the suit, even in that highly unlikely event that they prevailed in their suit. Therefore, their only purpose in prosecuting this suit was to harass the Plaintiff.

29. The Plaintiff was forced to proceed to defend himself against this frivolous defamation suit without an attorney – that is, *pro se*. Fortunately, although the Plaintiff was not, and never had been, a member of the bar, he was a law school graduate and was able to defend himself in this defamation lawsuit of Apex, Mr. Daniels and Mr. Hailey. However, even without fees for legal expenses, this suit has required the Plaintiff over nearly two years to travel to Tennessee and to expend an estimated 1,000 hours of his time and energy in defending himself. The Plaintiff has also suffered damages, including actual damages for the loss of his time and personal injury for emotional stress, as outlined below.

30. The Plaintiff removed the Apex's case from State Court to Federal Court and filed his Answer, stating, among other things, that he stands upon his First Amendment right of free speech and believes that everything that he has said is absolutely true, and is an accurate representation of the Apex's strategy and actions, and therefore could not be defamatory as a matter of law.

31. After the defamation suit was filed against him, the Plaintiff also established a website, the *Jim Clayton Chronicle* (http//jimclaytonchronicle.com), in which he published an article further describing the background and history of Mr. Clayton and Apex, Mr. Daniels and Mr. Hailey and asserting that he will continue to exercise his First Amendment right of free speech. That article or webpage is attached hereto as Exhibit E.

32. The Plaintiff recognized that proving the truth of the statements made by him and complained of by Apex, Mr. Daniels and Mr. Hailey could be easily be done by securing from

8
Case 3:21-cv-00025   Document 1   Filed 01/21/21   Page 8 of 16   PageID #: 8

Apex the record of its treatment of the hundreds, if not thousands, of other individuals whom they have pursued with a vengeance. This record would include how they purchased the loans and judgments from banks, other lenders and the FDIC at steep discounts from face value – sometimes at only a small fraction of the face value, and then pursued their victims vigorously, ultimately realizing obscene profits at the expense of the unfortunate debtors and guarantors.

33. Under Rule 26 of the Federal Rules of Civil Procedure, the Plaintiff unquestionably had the right to get this information from Apex. Thus, the Plaintiff filed a list of Interrogatory questions with Apex requesting this very basic information.

34. In response to the Plaintiff's request, Apex, Mr. Daniels, and Mr. Hailey filed a Motion for a Protective Order, seeking to avoid disclosing the requested information which they knew would confirm the truth of the Plaintiff's statements. By way of various, multiple and entirely frivolous efforts to avoid disclosure of this information, Apex, Mr. Daniels and Mr. Hailey delayed justice for more than a year.

35. On May 5, 2020, more than a year after their first frivolous Tennessee lawsuit, Apex, Mr. Daniels, and Mr. Hailey filed a *second* frivolous lawsuit in this Federal Court alleging that the Plaintiff also defamed them by the publication of the above-mentioned article on the website in which the Plaintiff made essentially the same statements about Apex, Mr. Daniels, and Mr. Hailey as he had previously done in the press release which was the subject of the first suit. (*eg.*: that Apex "(1) engaged in business endeavors to bring misery and suffering to hundreds of individuals and companies, (2) engaged in 'predatory actions' in their professional banking endeavors, and (3) engaged in predatory, immoral, un-Christian, and illegal actions.") The Summons and Complaint in that suit is attached hereto as Exhibit F.

36. Apex, Mr. Daniels, and Mr. Hailey could have easily filed a Motion to Amend their Complaint in the first suit to include this additional allegation of defamation, but they chose to file a second suit just to further burden the Plaintiff by requiring him to deal with an entirely new suit – "Lawfare" at its worst.

37. On June 1, 2020, Plaintiff filed his Answer to this second suit, alleging, as he did in the first suit, that he stands upon his First Amendment right of free speech and believes that everything that he said is absolutely true and is an accurate representation of Apex's strategy and actions.

38. On August 17, 2020, Apex, Mr. Daniels, and Mr. Hailey filed another frivolous motion, designed to cause the Plaintiff to once again respond to an absurd and unreasonable proposition: a Motion in Limine #1, seeking to block Plaintiff from testifying that Apex's actions in purchasing loans, defaulted loans or judgments are "predatory."

39. The duplicitous and frivolous rationale of Apex, Mr. Daniels, and Mr. Hailey was based upon the supposition that the Plaintiff had no requisite expertise in the banking industry and that the word "predatory" is a "term of art" with negative connotations in the banking industry.

40. However, Plaintiff's use of "predatory" was not, nor was it intended to be, a technical "term of art" as used by the banking industry, but rather as a word in common, everyday usage which means, according to *Merriam-Webster's Dictionary*: "disposed or showing a disposition to injure or exploit others for one's own gain" – an apt description of Apex's behavior. This is exactly what Apex, Mr. Daniels, and Mr. Hailey were doing with their strategy: seeking out unfortunate debtors and guarantors who have experienced financial problems and exploiting them by purchasing their loans at significant discounts from face value, and then initiating aggressive collection actions to realize extraordinary returns on their investments.

41. It was absurd that Apex, Mr. Daniels, and Mr. Hailey believed that they could stop the Plaintiff from testifying on one of the core issues of the suit – the "predatory" strategy and actions of Apex, but they filed this motion, as they had in all of their legal filings, simply to harass the Plaintiff and cause him additional time and work, hoping that he would give up under their relentless, but frivolous campaign against him.

42. For purposes of the record and for the benefit of history, Plaintiff re-alleges herein and forever after that the actions of Apex, Mr. Daniels, and Mr. Hailey, and indeed their very nature, are, in point of fact, ***predatory*** by every conceivable meaning of that word in this our English language.

43. On October 9, 2020, the Court issued an Order consolidating the two cases – combining what should have been one case from the very start.

44. On October 15, 2020, Apex, Mr. Daniels, and Mr. Hailey filed a document in which they offered "an incomplete usage of" a Tennessee pattern jury instruction because [the Plaintiff] raised truth as a defense to Apex's defamation claim.

45. On October 30, 2020, the Court issued an order severely criticizing Apex, Mr. Daniels, and Mr. Hailey, for asserting that position, stating that "the position [of Apex, Mr. Daniels, and Mr. Hailey] cannot be squared . . . seemingly with *any good-faith reading* of Tennessee law." The Court went on to dismiss the efforts of Apex, Mr. Daniels, and Mr. Hailey to avoid disclosure of the Plaintiff's Interrogatory questions, and requiring Apex, Mr. Daniels, and Mr. Hailey to produce the answers to the Plaintiff's Interrogatories within thirty days. (Case Number 3:19-cv-130, Order of the Court, Doc. 89, page 8, by his Honor Judge Travis R. McDonough, filed October 30, 2020, as attached hereto as Exhibit G.)

46. On November 20, 2020, Apex, Mr. Daniels, and Mr. Hailey filed a Response to the Order of the Court in which Apex, Mr. Daniels, and Mr. Hailey mischaracterized the Gramm-Leach-Bliley Act and the Tennessee Financial Records Privacy Act by quoting sections helpful to their cause, while ignoring sections of the same statutory provisions that plainly rendered their position untenable.

47. As a result of this mischaracterization of the law, the Court issued an Order severely criticizing Apex, Mr. Daniels, and Mr. Hailey and threatening to sanction them. (Case Number 3:19-cv-130, Order of the Court, Doc. 93, *passim*, by his Honor, Judge Travis R. McDonough, filed December 1, 2020, as attached hereto as Exhibit H.)

48. In their above-mentioned Response to the October 30th Order of the Court, Apex, Mr. Daniels, and Mr. Hailey also plainly stated their decision *not to comply* with the Order and set forth their resistance to their basic discovery obligations.

49. This shocking and illegal Response was an insult to this honorable Court; an outrage to the Rules of Civil Procedure; and was and is a flagrant misuse of the civil justice system.

50. On December 1, 2020, the Court issued an Order ordering the Plaintiffs to comply with the Court's previous Order in which it concluded "[Apex, Mr. Daniels, and Mr. Hailey], in short, have resisted their basic discovery obligations under the Federal Rules of Civil Procedure by pressing mischaracterizations of the law, costing [Plaintiff] and the Court substantial resources in the process." (Case Number 3:19-cv-130, Order of the Court, Doc. 93, *passim*, by his Honor, Judge Travis R. McDonough, filed December 1, 2020, as attached hereto as Exhibit H.)

51. Rather than comply with the Court's Order and wanting to keep from producing the answers to the Plaintiff's interrogatory requests which would have revealed the egregious

nature of their action in hundreds, if not thousands, of cases, Apex, Mr. Daniels, and Mr. Hailey filed a Motion to Dismiss their cases.

52. Thus, in order to avoid the disclosure of the information which Apex, Mr. Daniels, and Mr. Hailey knew would confirm the truth of the statements made by the Plaintiff, Apex, Mr. Daniels, and Mr. Hailey were willing to have their suits dismissed, thus demonstrating that their suits against the Plaintiff were without merit and were filed simply to harass and intimidate the Plaintiff and to burden him by requiring him to defend this action in Tennessee.

53. On January 8, 2021, the Court "terminated [these consolidated matters] *on the merits and in [Plaintiff's] favor* for purposes of any other litigation that may follow," thus leaving the door open for the Plaintiff to file the instant action. (Case Number 3:19-cv-130, Order of the Court, Doc. 103, page 2, by his Honor, Judge Travis R. McDonough, filed December 1, 2020, as attached hereto as Exhibit I.)

### FOR THE SOLE CAUSE OF ACTION: MALICIOUS PROSECUTION

54. The Plaintiff re-alleges the paragraphs above as if repeated herein verbatim.

55. Apex, and any person or entity in this nation, has a duty under the common law of Tennessee to refrain from maliciously prosecuting litigation without probable cause.

56. Apex, and any person or entity in this nation, has a duty to comply with Rule 1 of the Federal Rules of Civil Procedure requiring:

> "[The Rules] should be construed, administered, and employed by the court ***and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.***"

(emphasis added).

57. Apex breached its duties numerous times and in various ways, including but not limited to:

(a) Filing a first frivolous lawsuit, without probable cause, against Plaintiff for defamation despite the fact that Apex, Mr. Daniels, and Mr. Hailey knew that Plaintiff's statements were substantially true;

(b) Filing a second frivolous lawsuit, without probable cause, against Plaintiff for defamation despite the fact that Apex, Mr. Daniels and Mr. Hailey knew that Plaintiff's statements were substantially true;

(c) Maintaining, without probable cause, a total and complete willful and wrongful disregard for their obligations under Rules 26, 33, and 34 of the Federal Rules of Civil Procedure in violation of their basic discovery obligations;

(d) Filing multiple motions, without probable cause and completely unwarranted by existing law and without evidentiary support, for improper purposes, unnecessary delay, harassment, and needlessly increasing the cost, difficulty and time of litigation on an exponential level;

(e) Ignoring court orders, including from this Honorable Court, in abject rejection of the recognized and sacred authority, decency, respect, decorum, and professionalism that should otherwise go hand-in-hand with any Article III Court, and specifically the United States District Court for the Eastern District of Tennessee, or any other federal, state, or municipal part of the judiciary of these United States of America; and

(f) Such other ways as will be shown and proven at trial.

58. In all of the above-described actions and inactions, Apex, Mr. Daniels, and Mr. Hailey knowingly *acted with malice* as their ulterior purpose was to harass; intimidate; and cause additional and unnecessary costs, including expenses, work, time and emotional energy.

59. In all of the above-described actions and inactions, Apex, Mr. Daniels, and Mr. Hailey, acting with malice, did in fact cause Plaintiff harassment, intimidation, and additional and unnecessary costs, including, expenses, work, time, and emotional energy – all of which required Plaintiff to spend countless hours defending himself here in Tennessee, thus depleting his financial, time, and emotional resources needed to continue defending himself in the South Carolina litigation.

60. As noted above in Paragraph 53, on January 8, 2021, the Court "terminated [the cases of Apex, Mr. Daniels, and Mr. Hailey] *on the merits and in [Plaintiff's] favor* for purposes of any other litigation that may follow."

61. As a direct and proximate result of the wrongful actions and inactions of Apex, Mr. Daniels, and Mr. Hailey as described above, the Plaintiff has suffered actual and ongoing damages, including actual expenses and loss of countless hours of his time and energy in having to defend himself from these frivolous suits.

62. As a direct and proximate result of wrongful actions and inactions of Apex, Mr. Daniels, and Mr. Hailey as described above, the Plaintiff has suffered incidental and consequential damages, including personal injury in the form of emotional stress, weight loss, loss of appetite, loss of sleep, loss of enjoyment of life, anguish, anxiety, embarrassment, harassment, terror, and other damages to be more fully proved at trial.

63. Given the willful, wanton, and malicious motives in the actions and inactions of Apex, Mr. Daniels, and Mr. Hailey, the Plaintiff should be awarded punitive damages as the law allows, in addition to his economic and noneconomic damages.

WHEREFORE, having fully set forth his claim, the Plaintiff respectfully prays that this Court inquire into the matters set forth herein and:

(1) provide for an award of actual damages against Apex;

(2) provide for an award of punitive damages against Apex;

(3) provide for costs and expenses of this action;

(4) provide for a jury of twelve persons to be empaneled to hear this case; and

(5) provide for such other and further relief for the Plaintiff as this Court may deem just and proper.

*(signature)*
Bettis C. Rainsford, Sr., *Pro Se*
P. O. Box 388
Edgefield, South Carolina 29824
(803) 637-5304 (off)
(803) 384-0013 (cell)
brainsford@rainsforddevelopment.com

January 19, 2021
Edgefield, South Carolina